UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS M. PEARSON, et al., | ) | Case No. 4:15-CV-1377 |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION, et al., | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |

This matter is before the Court on the motions for summary judgment of (1) PNC Bank, National Association ("PNC") and Deutsche Bank Trust Company Americas ("Deutsche Bank") (collectively, the "Banks") (Doc. #69), and (2) Safeguard Properties, LLC ("Safeguard") (collectively, "Defendants") (Doc. #70). Defendants move for summary judgment on the Amended Complaint of Plaintiffs Thomas M. Pearson and Claudia Pearson ("Plaintiffs"). Plaintiffs have opposed the motions for summary judgment, and Defendants have replied. For the reasons that follow, Defendants' respective motions for summary judgment are GRANTED.

I.   FACTS

This case involves claims for property damage which allegedly occurred during the property preservation efforts at a residential dwelling. Thomas Pearson purchased the residence in Canfield, Ohio in 2006 for $95,000.00. He financed the purchase in major part through a mortgage loan from National City Bank for $90,000.00. National City Bank subsequently merged with and into PNC. Deutsche Bank has an interest in the loan pursuant to a servicing agreement with PNC.

1

Plaintiffs did not visit the home after acquiring it until September of 2011. Mr. Pearson's relative lived in the home until Mr. Pearson evicted her in 2010. While Mr. Pearson's relative lived in the property, Plaintiffs did not retain any person or company to work on their behalf to check on the property and ensure it was being maintained. Plaintiffs did not make any effort to secure the property after the eviction, and were unaware of the condition of the property at that time.

Mr. Pearson inspected the house for the first time after its purchase in September of 2011. He observed several items of damage or neglect throughout the property. For instance, Mr. Pearson observed and repaired structural damage to the garage wall and damage to the garage door. He also observed and repaired damage to windows, doors, and the bathroom, among other items.

Mr. Pearson does not know whether any of the damage he noted in September of 2011 was caused by Defendants. He conceded that all of the conditions could have existed when his relative was evicted from the property, or could have been caused by vandalism. (Doc. #74, Pearson Dep. p. 57-69.)

Mr. Pearson has not returned to the property since approximately October of 2011. He has not personally done anything to maintain the property. He did not hire anyone to go into the property and maintain it. (*Id.* at 39.) Mr. Pearson admitted that, as the property owner, he was responsible for maintaining the property. (*Id.* at 36, 38-39, and 43.)

In the event of Plaintiffs' failure to maintain the premises and default on the mortgage, the express terms of the mortgage contract gave the Banks the right to undertake any "reasonable and appropriate" efforts to protect and preserve the real estate. (Doc. # 17, Ex. C.) However, the Banks were not obligated under the mortgage contract to undertake any preservation efforts, and

expressly disclaimed liability for declining to undertake such efforts. (*Id*.)

In 2009, PNC requested that Safeguard provide inspection and preservation services for the property. Safeguard uses independent subcontractors for all work and inspections. The independent subcontractors are paid on a per visit basis, and are not paid an hourly rate. Prior to any work being completed at the property, Safeguard sent a bid to PNC. PNC either approved or denied the bids. Any work completed at the property was at the request of PNC, but was completed by independent subcontractors of Safeguard. (Doc. # 75, Meyer Dep. p. 32, 34-35, and 71-72.)

In 2013, Safeguard submitted a bid to PNC to remediate mold in the interior of the house. PNC approved the bid to clean the mold with bleach and then seal with a white, mold-inhibiting "Kilz" brand product in multiple areas of the house. An independent contractor of Safeguard used the white product to seal the areas it treated for mold in April 2013. (*Id*. p. 97-98, 102-104.) Plaintiffs became aware of the mold treatment in 2013 when a realtor retained by Plaintiffs to periodically check on the status of the house noticed it and advised Mr. Pearson. (Doc. #74, Pearson Dep. p. 30.) Plaintiffs have never had the house inspected for the presence of mold. (*Id*. at 43.) Plaintiffs have no evidence to explain how the mold came to be in the house. (*Id*. at 56.) Plaintiffs do not dispute that mold was in the house in 2013. (*Id*.)

In 2011, Plaintiffs filed a bankruptcy proceeding in California. (*Id*. at 11.) As part of the bankruptcy plan, Plaintiffs entered into an agreed payment schedule with the Banks. (*Id*. at 21.) The personal bankruptcy proceeding was dismissed in 2013 because Plaintiffs failed to make the required payments under the court-approved plan. (*Id*. at 11.) Plaintiffs have not made payments on the mortgage following the dismissal of the bankruptcy proceedings. (*Id*. at 22.) At no point during the bankruptcy proceedings did Plaintiffs assert that there had been damage to the

3

property in connection with property preservation efforts. (*Id*. at 104-107.)

Now, Plaintiffs allege breach of fiduciary duty against the Banks and negligence against all Defendants. In their opposition to summary judgment, Plaintiffs also attempt to raise a breach of contract claim not pled in the complaint. The Banks and Safeguard have separately moved for summary judgment. For the reasons explained herein, the Court finds that no issue of material fact remains for a jury to decide on any of Plaintiffs' claims. Consequently, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

## II.     LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir.1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an

affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. LAW AND ANALYSIS

#### A. Breach of Fiduciary Duty

In Count One of the amended complaint, Plaintiffs claim that the Banks owed them a fiduciary duty and caused "extensive damage and destruction" of the property "in as much as the [Banks] exercised and took action in furtherance of their contractual right set forth in the [m]ortgage to enter the [s]ubject [p]remises to preserve the [s]ubject [p]remises and protect their interest in the collateral." To prove a breach of fiduciary duty under Ohio law, "[a] plaintiff must establish: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Gracetech Inc. v. Perez*, No. 96913, 2012 WL 589473, *4 (Ohio Ct. App. Feb. 23, 2012); *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 597 (N.D. Ohio 2009) (same) (quoting *Werthmann v. DONet, Inc.*, No. 20814, 2005 WL 1490372, *7 (Ohio Ct. App. June 24, 2005)). Plaintiffs' claim fails as a matter of law because Plaintiffs cannot show that the Banks and Plaintiffs were in a fiduciary relationship.

In Ohio, "[a] fiduciary relationship exists when special confidence and trust is placed in another and, by virtue of this trust, there results a position of superiority and influence." *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 442 (1996) (citing *In re Termination of Emp.*, 40 Ohio St.2d 107, 115 (1974)). A fiduciary relationship is not unilaterally created, but

5

rather both parties must understand that a special trust or confidence has been reposed in the relationship. *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282, syllabus para. 1 (1979). It is well-settled under Ohio law that the relationship between a debtor and creditor is not a fiduciary relationship because the parties stand at arms-length. *Stone v. Davis*, 66 Ohio St.2d 74, 78 (1981). Thus, a fiduciary relationship does not exist between a bank and its customer absent special circumstances. *Groob b. Keybank*, 108 Ohio St.3d 348, 353 (2006).

Plaintiffs have not identified any special circumstance that would give rise to a fiduciary relationship in this case. The mortgage document does not explicitly create a fiduciary role for the Banks. *See* R.C. 1109.15(E) ("Unless otherwise expressly agreed in writing, the relationship between a bank and its obligor, with respect to any extension of credit, is that of a creditor and debtor, and creates no fiduciary or other relationship between the parties.") Moreover, Plaintiffs have not asserted any circumstances during the mortgage negotiation process to demonstrate that the process was anything other than an arms-length transaction. Plaintiffs have not alleged or presented any evidence that the bank assumed a role of special trust, confidence, dominance, or superiority in the execution of the mortgage contract. Although Plaintiffs argue that the Banks asserted dominance when they took physical control of the property, Plaintiffs have not cited any legal authority to support that this type of physical control of a property -- control that was expressly and unambiguously authorized by the parties' arms-length mortgage agreement -- is the type of superiority and influence contemplated by courts to create a "special circumstance." Thus, there is no special circumstance here that would give rise to an exception to the rule that the relationship between a lender and borrower is not a fiduciary one. Accordingly, Plaintiffs have not established the existence of a fiduciary relationship in this case. *See Smith v. Fifth Third Mortg. Co.*, No. 15 C

5820, 2015 WL 6152848, *2 (N.D. Ill. October 19, 2015) (dismissing a breach of fiduciary duty claim under Fed. R. Civ. P. 12(b)(6) when plaintiffs alleged that property preservation specialists exerted dominion by intruding on the subject property).

In addition, to the extent Plaintiffs argue that the contractual duty of good faith and fair dealing may form the basis of a fiduciary relationship, Plaintiffs' argument lacks any support in the law. The Court also rejects Plaintiffs' argument that they sufficiently established a claim for breach of contract. This claim was never pled, nor did Plaintiffs seek leave to plead breach of contract by way of a second amended complaint. Under these circumstances, the Court declines to consider a claim raised for the first time in opposition to summary judgment. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (affirming the district court's refusal to consider a new claim that was raised for the first time on summary judgment because the plaintiff could have sought leave to amend the complaint).

**B. Negligence**

Plaintiffs assert that the Banks and Safeguard negligently damaged the property, thus impairing the collateral for Plaintiffs' loan. The elements of a negligence suit are: (1) the existence of a legal duty; (2) the defendant's breach of that duty; and (3) injury that is the proximate cause of the defendant's breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). Plaintiffs have not produced evidence sufficient to establish that Defendants were negligent in the course of their property preservation efforts.

Plaintiffs' negligence claim involves alleged damage which essentially falls into two categories. One category involves alleged damage to a variety of items throughout the residence which Plaintiffs attempt to attribute to Defendants' property preservation efforts. The second category involves alleged damage associated with application of treatment to remediate

mold throughout the premises.

With respect to the first category, Plaintiffs have conceded that they have no evidence whatsoever to show that Defendants' actions caused damage to the property.  Mr. Pearson had no knowledge of the condition of the property when his relative was evicted in 2010.  He did not know what had transpired on the property between the eviction and when he first went to the property in September 2011.  Plaintiffs offer only speculation that the damage was caused by Defendants.

Mr. Pearson's deposition testimony is illustrative of the lack of evidence.  Mr. Pearson testified:

> Q: Do you know if the wall in the garage, which was separated from the foundation was damaged when Ms. Harry lived there?
> A: I have no idea.
> Q.: Do you know if that occurred between the time Ms. Harry left the property and prior to the foreclosure proceedings starting?
> A: I don't know.  I just know it was that way when I arrived in 2011.
> Q: Do you know how long it was damaged?
> A: Don't know.
> Q: Do you know who caused the damage?
> A: Don't know.
> 			***
> Q: You mentioned the overhead garage door that you repaired?
> A: Yes.
> Q: Do you know who damaged the overhead garage door?
> A: I do not.
> Q: Do you know how it was damaged?
> A: I do not.
> 			***
> Q: You also mentioned there was damage to the upstairs bathroom. . . .  Do you know if the removal of the tiles or the hole in the wall was caused by vandalism?
> A: I have no idea.
> Q: Do you have any evidence to show that Safeguard caused the damage?

8

      A:     I do not.

***

      Q:    Do you know how the windows in the bedroom and the living room became cracked or broken?
      A:    I do not.
      Q:    Do you have any evidence to show that Safeguard caused this damage?
      A:    I do not.

(Doc. #74, Pearson Dep. p. 58-60, 62-64, 65-66.)

Plaintiffs, by their own admission, cannot present any evidence to show what the condition of the property was when Defendants began preservation efforts. Accordingly, Plaintiffs have no evidence that Defendants caused damage to the property. Defendants are thus entitled to summary judgment on this portion of Plaintiffs' negligence claim.

Plaintiffs likewise have not presented evidence to demonstrate negligence related to the mold remediation. Plaintiffs have never had the house inspected for the presence of mold. Plaintiffs have no evidence to explain how the mold came to be in the house. Plaintiffs do not dispute that mold was in the house in 2013 when the mold remediation efforts were initiated. Plaintiffs further do not dispute that it would have been appropriate or reasonable for Defendants to have used property preservation efforts to remediate the presence of the mold. Instead, Plaintiffs appear to take issue with the fact that Safeguard's independent contractor used a white substance to remediate the mold instead of a clear substance.

Plaintiffs do not offer any evidence to demonstrate that it was improper for the contractor to have used the white substance for mold remediation. Plaintiffs do not present any expert witness testimony or other evidence to suggest that the contractor should have used a different substance. Instead, Plaintiffs simply offer Mr. Pearson's speculation, devoid of any evidentiary foundation to support his opinion, that a clear substance should have been used.

As Plaintiffs acknowledge in their opposition to summary judgment, Safeguard's

9

representative testified that the white substance used by Safeguard's independent contractor at the property is regularly and routinely used to treat mold infiltration. Plaintiffs have not offered any evidence to show that this deviates from the appropriate standard of care. Accordingly, Plaintiffs cannot not show that Defendants breached any duty, as Plaintiffs must do to sustain a negligence claim.

Moreover, to the extent Plaintiffs allege other negligence by Defendants not discussed above, Plaintiffs' claim fails. Safeguard cannot be held liable for negligence with respect to the property preservation efforts under the principle that an employer generally is not liable for negligent acts of an independent contractor. *Pusey v. Grief Bros. Corp.*, 94 Ohio St.3d 275, 278 (2002). An independent contractor is one with which the employer contracts to achieve a certain result only, with the means of achieving that result left to the independent contractor. *Kruse v. Revelson*, 115 Ohio St. 594, 597 (1927). "Where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be determined by the court." *Touhey v. Ed's Tree & Turf, LLC*, 194 Ohio App.3d 800, 804 (2011).

Here, Safeguard has provided evidence that all property preservation work performed at the property was done by independent subcontractors of Safeguard. Safeguard does not employ individuals to go out to the properties and perform preservation work. Instead, all of the work is completed by independent subcontractors. The independent subcontractors provide Safeguard with their tax ID information and they must provide their own insurance. The independent subcontractors determine the means of performing the work. Safeguard does not provide specific instructions as to what tools or products should be used. Furthermore, an independent subcontractor is permitted to retain a subcontractor on its behalf. (Doc. #75, Meyer Dep. p. 22-

25, 32-33, 67, and 70-71.)

Plaintiff does not dispute that Safeguard used independent contractors at the property. Moreover, Plaintiff does not point to any evidence in the record that might disprove that Safeguard used independent contractors. Plaintiff also does not provide any meaningful argument that Safeguard is liable in negligence despite the use of independent contractors at the property. Accordingly, any negligence claim against Safeguard fails as a matter of law.

With respect to the Banks, "[a] principal is vicariously liable only when an agent could be held directly liable." *Nat'l Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 599 (2009). Thus, because Safeguard is not liable to Plaintiffs for negligence, the Banks cannot be vicariously liable for negligence. Plaintiffs do not contest that Defendants cannot be vicariously liable for Safeguard's conduct if Safeguard is not independently liable. Plaintiffs also do not contest that their claims against Defendants are predicated entirely upon vicarious liability for Safeguard's conduct. Accordingly, because the negligence claims against Safeguard fail as a matter of law, so too must the negligence claims asserted against the Banks.

For all of these reasons, Plaintiffs' negligence claims fail as a matter of law even when the evidence is viewed in a light most favorable to Plaintiffs. Accordingly, Defendants are entitled to summary judgment on these claims.

## IV. CONCLUSION

For the reasons set forth herein, the motions for summary judgment filed by the Banks (Doc. #69) and Safeguard (Doc. #70) are GRANTED in their entirety.

**IT IS SO ORDERED.**

                                         _s/John R. Adams_____
                                         JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE

**DATED**: MARCH 31, 2017